The issue in this case is not whether or not Petroleum Sales reached the dealership and supply agreements. The issue is whether the use of the 3-cent-per-gallon allowance or the withholding thereof is an unenforceable penalty. And we assert three different public policies of California, California providing the rule of decision here, that cause this penalty to fail. One, because it's a penalty. Two, because it's unconscionable. And three, because it operates to exonerate Valero from its illegal conduct, namely price discrimination. In preparing, I reviewed one of the cases we cite. Why isn't this just a 3-cent bonus if you play ball with Valero on their credit cards? Because everybody – because it's not limited to credit cards. Before the credit card issue ever came up, the contract provided that – it said everybody's going to get a 3-cent allowance, but we can withhold that allowance from you if you're a bad boy. No, they didn't say bad boy. They said we will withhold the 3-cent allowance in our own discretion and for whatever reason we want. Isn't this just a bonus, the same kind of bonus they get in a law firm and sometimes on Wall Street, if not any longer? I mean, just a bonus, 3 cents, if you do everything we want you to do and cooperate with us and you don't get 3 cents for whatever reason. Well, but the point is, as applied here in this case, they're using it as an unenforceable penalty. It bears no relationship whatsoever to the damages Valero might have suffered from PSI using its own credit card agreement. I mean, that was the point. They came forward and said, we don't want you to use your own – excuse me, I'm getting ahead of myself. The dispute, as it were, started because Valero's data processing system was unreasonably slow and customers were leaving the gas station because it took too long for their credit cards to be approved. After complaints and complaints and no inaction, PSI decides to start its own credit card system at a time when it was not expressly prohibited from doing so. Valero gets wind of this, tries to amend its – The reason Valero got wind of it was, accordingly to the record, because some of their So they want to take care of their clients and their customers and they wanted you to use – they wanted PSI to use the Valero credit card system. I don't think that's accurate. They weren't customers going into Valero. There's nothing in the record to support Valero customers with credit cards going into PSI stations that couldn't make them work. The point was that Valero said, we don't – we have to – before we can accept Valero credit cards, we have to give our approval. And they withheld the approval and they said, if you persist, we're going to withhold this – we're going to stop granting you this three cents a gallon allowance. And so based on that, after this went on for a year or so, PSI finally relented and brought this action to recover the withholding of that allowance because that operated as an unenforceable penalty, because the contract was unconscionable, which is an independent basis for – for refusing to enforce it. Why was it unconscionable, Mr. DeLaria? The contract was a California contract. It has to be both procedurally unconscionable and substantively unconscionable, right? Yes. Procedurally unconscionable. This contract was negotiated by Valero and PSI for nine months on the price of the station. With PSI represented by counsel. Yep. Wasn't it? Sure they were. I don't know offhand. So where is the procedural? In California, we have a bunch of cases where somebody signs a contract and up pops a little line in small print that nobody could read and the poor, unsophisticated obligee says it was unconscionable because this came in at the last moment and they held a gun to my head and I didn't know what I was signing. That's the kind of unconscionable contract we're talking about. Here, what was – can you cite me a case in California where there's been procedural unconscionability where the person claiming it has had nine months to negotiate the price of four stations and an attorney to do it with? Well, the price was negotiated, but nothing else was negotiated. That's my first answer. Namely – Price is pretty important. The price is important, but we're not – but that's not the unconscionable part that we're – And they were given the opportunity not to buy the station. That's a substantive unconscionability. They were said, stay on your lease. Well, they were told they could lease and lose and be uncompetitive. In other words, it was set up on a totally take-it-or-leave-it basis. The upshot of the – As to everything but price. Your – I assume that you're going to – that you're going to tell us, Mr. Delario, that your clients are sophisticated business people. My clients are business people. The degree of sophistication – here's where we're – I want to respond to Justice Bea – Judge Bea's comment, namely that this isn't consumer fine print and so on and so forth, which is a context in which unconscionability frequently arises. And the case that says that it's not limited to those situations is Graham v. Scissortail, in which Bill Graham, rock concert impresario, who I would say would be as sophisticated as anyone, was allowed to insert the unconscionability doctrine by the California Supreme Court. Moreover, unconscionability is found in two places in the California statutes. In the civil code, sections 1670.5 and 1671, and again in the California commercial code. Did your clients – did your clients test Valero's threat that any changes to the contract would avoid the contract? Did they test it? Yeah, did they test it? I mean, this is – this may be just a little bit of saber-rattling. It's an opening negotiating position. You negotiate for nine months. At any point in those nine months, did PSI ever test Valero's claim that they would leave the negotiations if you tried to negotiate over anything other than price? I don't think the record was developed to that extent. And to the extent that that's missing from the record, we were entitled to present evidence of the circumstances surrounding the negotiation in order to assess the unconscionability. It looks like an opening negotiating position, but PSI, I assume, is just as – is We've been running the station for a long time. We know what we're doing, and we hit the ground running. You want to find somebody else, that's fine. I don't think that the record would support that, that there was a – there was a – There's nothing in the record at all on that. There's nothing in the record, and we were – and those are issues of fact which preclude summary judgment. But it does go to the question of when you have – when you have two commercial entities negotiating with each other, there's a problem. Whether in the course of nine months of negotiations in which they're aided by counsel, whether one of them can come back years later and say this was an unconscionable contract. You know, you have a claim for breach of contract. You've got a claim for price discrimination, and you have a claim for unfair competition. Is this unconscionability under the breach of contract claim? Well, unconscionability goes to the – the breach of contract claim is for a refund of the sums withheld. Okay. Because you don't appeal the breach of contract claim. Pardon me? You have not argued on appeal the breach of contract claim. Well, we're arguing on the breach of contract to the extent we're saying we were entitled – they breached this contract by enforcing unilaterally. That was the problem. It was a self-help penalty. I forgot to mention that additional independent grounds for inviolate. Well, I don't see an argument on breach of contract in your brief. Well, the argument that this clause was unenforceable is our breach of contract argument, Your Honor. We're saying we did everything that we were supposed to do. They imposed this penalty on it, and therefore, that was a – If you have an unconscionable contract, does that void the contract? No, it doesn't void the contract. It doesn't void it? Well, it – we're talking about the specific clause. We're saying this clause is unconscionable. But I want to keep the Court's focus on the point that even if you – if I hadn't won your hearts and minds about the unconscionability here, that the other grounds exist independent of the unconscionability analysis, namely that it's self-help, which is against the public policy in California, and that it's a penalty. And in the leading California case on this subject, Ridgley v. Topaz Savings, the California Supreme Court says, A penalty provision operates to compel performance of an act usually becomes effective only in the event of default upon which forfeiture is compelled without regard to damages sustained. Now, that's exactly what happened here. There was a forfeiture, namely the allowance, without regard to damages sustained. As we pointed out in our brief, there were no damages ever alleged. They didn't file what would have been a compulsory counterclaim, that there were damages that they suffered by our conduct. In other words, this was a stick that we were going to use to bring recalcitrant feelers to heel and to suggest that Valero, a multinational billion-dollar company, is empowering material with a guy who owns five or six gas stations, is, I think, no different than a consumer who's dealing with a bank or some other institution. They're not the negotiation may be, there may be, quote, unquote, negotiation, but it's not the quality of the negotiation. And as Graham v. Scissortail says, unconscionability and these principles aren't limited to consumer contexts. So in that circumstance, this was an unenforceable penalty. This was an unenforceable self-help remedy. This was an unconscionable provision. And then if we get that far, you have to conclude that we also have illegal price discrimination, because that's how it operated. The point, and the California Supreme Court teaches this, is that we have to look at the substance of what was going on here, not the form. And I think when we look at the substance, there's no conclusion that can be reached except that this was unenforceable. To the extent that there are issues of fact about the circumstances around the formation or the operation of this contract, that's for a trial, either for a prior fact to determine. This was a summary judgment case. We never got to that point. We don't have any substantial evidence to look at. Before I reserve a few minutes of my time for rebuttal, I would like to point out that the Court needs to reach either because you disagree with us on the judgment and the merits, or because this is going to come up on remand, the question of the attorney fee award. And in that context, I think that the attorney fee award has to be reversed, because, if it doesn't fall with the judgment itself, because the fee claimant never satisfied its initial burden of proof. There was nothing to rebut. So when the district court judge says we didn't rebut the showing in May, the initial showing was never made. And secondly, the idea, the notion that San Francisco megafirms provide the relevant legal community for purposes of a fee award in the Northern District of California simply cannot be supported. There are 50,000 lawyers or more. This elite subset for which this survey purported to demonstrate rates comprises, if you do the math, 33 firms of 67 lawyers or something like that. Something less than 2,100 lawyers out of a law population of about 2,000. So either you reach that, as I hope you do, with instructions for remand, or independently because you affirmed the main judgment, that part of the judgment must be reversed and remanded. Thank you. Roberts. Thank you, counsel. Thank you, Your Honor. If it pleases the Court, I'm John Grenfell representing the appellees who I'll call Valero. I think on the contract issues, there seem to be three or four arguments being advanced. One is unconscionability, which I think has been explored pretty well so far. I mean, the essence of PSI's argument is that when they were offered the chance to buy these stations, it was such a good deal that they had to take it. And so now they get to revisit what they agreed to. That is not the kind of surprise or oppression that has triggered unconscionability under California law. There's also this concept of self-help. And the problem here is that that's just not a principle of contract law. Parties to a contract can qualify or condition their obligations and then refuse to perform or claim excuse not to perform if those agreements are not satisfied. If I agree to sell a car to Mr. Delario and the contract says I don't have to deliver a title until he tenders the price and he doesn't tender the price, I don't have to give him the car and then sue to get it back. Are you withdrawing from the position that the 3-cent-a-gallon payment is a pure bonus and discretionary? Are you taking the position now that you're you can only withhold paying the 3 cents if there is a breach by the other side? No, Your Honor. The contract says, I guess, three things. One is the purpose of this allowance is to assist you, the dealer, in complying with your contractual obligations. Secondly, it says we can withdraw this for any reason in our discretion. So, no, we're not withdrawing from that. Thirdly, it says in particular we can withdraw it if you don't comply with your obligations. And that's the provision that has the word tenant in it, which I think is clearly a So what I'm saying is there is a clear right on Valero's part to say if you, the dealer, haven't complied with your obligations, we don't have to pay you this allowance. And when you bring yourself back into compliance, which eventually they did, then they resume paying. So if you if the 3-cent-a-gallon payment does not really help the dealer comply with his contract, and within six months you can just stop it and say we're not going to pay you. The Valero had complete discretion to withdraw the payment for any reason. However, I think if you look at the entirety of the agreement, you would see that the concept was that this is there as our part of the deal of your complying with your obligations. And as the case comes to this court, there's no claim that Valero breached its obligations by its contractual obligations by withholding the allowance. And there's no claim that PSI didn't breach its obligations with what it was doing with those credit cards. Then there is reference to penalties, which I think is a reference to liquidated damages in which I don't think was properly raised as a ground of appeal in the opening brief. But it can be dealt with very quickly. Liquidated damages means what it says. It's a provision fixing the damages that a court can award if it finds a breach. There's no provision like that here. Secondly, liquidated damage provisions are not invalid in California. If you look at Section 1671B of the Civil Code, it says that for a non-consumer contract, which this is, those provisions are presumptively valid unless the party attacking them shows that they were unreasonable as of the time the contract was made, which in this case would be back in 2000. And there was no showing like that in this case. And there is no argument for that effect either below or here. Then there's the concept in the brief, and counsel mentioned it, that this provision might operate as a exculpatory clause for violations of the Robinson-Pattman Act. We've never contended that. Our position on the Robinson-Pattman Act is that we didn't violate it because we treated all of the dealers the same. Valero said if there was no evidence that any dealer refused to comply with its agreement or specifically the credit card aspects, and nevertheless was allowed to continue receiving the facility's allowance. And it's undisputed that when PSI brought itself back into compliance with the contract, it got the allowance back. So the allowance was functionally available. That's a complete defense to Robinson-Pattman liability. It is not analogous to the Morton Salt case where the court said, well, a big volume discount is not available practically to people if they have to buy an enormous quantity of the commodity in order to get the discount. Here, all PSI had to do was comply with its contractual obligations. And there's no evidence that the gasoline had moved interstate before it went to the stations. That's also true. Do we need under Robinson-Pattman to get to functional availability? You don't, Your Honor, although I guess there's an ancillary claim under State price discrimination law where you probably would. If one follows the adage, never decide anything you don't have to. That's correct, Your Honor. There are some evidentiary issues raised in the brief, but at no point has PSI ever identified a piece of evidence and explained why it was noncumulative evidence that was material to some issue that is before the court on this appeal. Now, on the attorney's fees, there's a procedural issue and a substantive issue. The procedural issue is whether Valero's original papers should have included the Price Waterhouse survey. And in retrospect, they probably should. But Valero was following the local rule which said that you could submit a statement of either the customary hourly charges of the attorney or comparable prevailing hourly rates or other indication of the value of the services. Frankly, that local rule may not be quite consistent with what this Court has required or the Supreme Court has required for an attorney's fee showing. But the question here is just, was it an abuse of discretion to allow a party like Valero, which had complied with the local rule, to supplement its showing later? And I think it clearly was not. The suggestion is made that PSI didn't have an opportunity to submit evidentiary rebuttal. They did. They did make argument. But there's nothing in the record to suggest that either they tried to submit rebuttal evidence or that they wouldn't have been allowed to if they had tried. So I don't think that's a real issue. The substantive issue is whether the Price Waterhouse Survey is adequate validation, let's say, of the prevailing rate. And the issue here is not to identify a single market-clearing price for legal services the way you might in a damage analysis for a commodity. The issue, because the Supreme Court said in Blum v. Stenson there is no such market price for legal services. The issue is whether the attorney's rates are in line with those charged by lawyers in the same community for similar services of reasonably comparable skill, experience, or reputation. So in this case, Valero, I think, reasonably retained lawyers who were experienced in petroleum dealership litigation, antitrust, complex contract litigation. Those lawyers put in evidence that their rates were set in part based upon the Price Waterhouse Survey, which in turn provided a breakdown at different levels of experience for large firms with offices in San Francisco. The total sample was 33 firms, I think of 450 or more, but the San Francisco offices had an average of about 60. So it's a pretty good range of small and large firms. And we would submit that the district court acted within its discretion in accepting that evidence. If there's nothing more, I'll submit. Roberts. Thank you, counsel. Mr. Galerio, that's the time remaining. A couple of quick things, and then I'll submit. First of all, some of the points that we assert are conceded by Valero in its brief. First of all, they concede that there was no negotiation regarding the terms of the contract, that the price was the only term that was negotiated. And certainly, when there are terms you don't like, you can insist that the price be changed to reflect your position rather than changing that term. Well, that would be an issue of fact I would submit, Your Honor. Secondly, they concede that this was a penalty at page 27 of their brief in trying to describe why they weren't engaged in unlawful price discrimination. With regard to the Robinson Patent and Jurisdiction issue, it's our view that as long as the transaction crosses State lines, and the payments here certainly did. What case do you support that position with? Well, I believe that's the Morton Salt case, Your Honor, that suggests that it's not limited to the movement of the goods themselves, but that the transaction has to be an interstate commerce. And then finally, with regard to the fee application, I don't think local rules can supersede Ninth Circuit or U.S. court precedent. Secondly, they didn't comply with the rules in the first place, and that's why the magistrate had to give them three chances to resubmit their own data in connection with his report and recommendation, data that was ultimately relied upon by the district court. The relevant community is the district of the whole, and the subset, the evidence that they provided, does not address what the prevailing market rates are in the Northern District of California. Did PSI submit some evidence as to the prevailing market rates? PSI submitted my declaration, as to which I attempted to qualify myself as an expert based on my years of experience, at the risk of talking about my own work here. It's simply that I recounted what that experience was and supported it with two recent fee cases that I had participated in, as well as a national – a survey conducted by a national firm. The district court only looked at the survey, ignored or made no reference to the declaration whatsoever. So we consider that to be a further error, although I would – and then the final point I'll make on this point, and then I'll step aside and submit, is that at the time PSI prepared its opposition to the motion, we didn't have this mega firm survey. That didn't come in until after we pointed out and said, hey, you guys didn't meet your initial burden. So it's our view that the motion should have been denied outright because they never met their initial burden. But thank you. Thank you, counsel. Petroleum Sales v. Valero is submitted. And the next case will be California Pacific.
judges: Bybee, Bea, Roth